## Laurel Equipment Company v. Rig & Crane Equipment Rental, Inc.

*Arthur F. Loeben, Jr.,* for plaintiff.

*William J. MacDermott,* for defendant.

*Lester J. Schaffer,* for additional defendant.

TREDINNICK, J., February 13, 1975.—On May 11, 1973, plaintiff, a Maryland corporation, brought suit against defendant, a Pennsylvania corporation. Defendant responded with an answer and counterclaim. Interrogatories and a deposition followed. Subsequently, defendant filed complaints against two additional defendants, Parker Construction Company, a New Jersey corporation not registered in Pennsylvania, and York County Bridge, Inc., a Pennsylvania corporation.[1] Service of the complaint against Parker was effectuated under the Pennsylvania "long-arm" statute, the Act of November 15, 1972, P. L. 1063 (No. 271), sec. 8301, et seq., 42 Pa.C.S.A. §8301, et seq. Pursuant to Pa. R. C. P. 1017(b)(1),[2] Parker filed a preliminary

---

[1] The action against York County Bridge, Inc., was discontinued March 14, 1974.

[2] "Preliminary objections are available to any party and

objection raising a question of jurisdiction. The preliminary objection was sustained, and the complaint against Parker was stricken by order dated January 10, 1975. Plaintiff's appeal necessitates this opinion.

Following examination of the pleadings and the discovery that has transpired, we glean the following factual basis regarding jurisdiction over Parker: Parker is the owner of a crane. In February 1972, an oral contract was made via telephone between Parker in its New Jersey office and defendant in its Pennsylvania office, whereby Parker agreed to lease the crane to defendant. In accordance with this agreement, the crane was loaded upon several trailers in New Jersey. By agreement between defendant and York County Bridge, Inc., the trailers were transported by York to Washington, D. C. En route to Washington, the crane passed through York, Pa. After arriving in Washington, the crane required repair. Defendant orally contracted with plaintiff to obtain the necessary repairs. A dispute regarding the performance of this agreement resulted in the original action between plaintiff and defendant, to which plaintiff later joined Parker.

The sole issue is whether Parker had sufficient contact with Pennsylvania to render it amenable to service under the Pennsylvania "long-arm" statute, supra. Section 8309 of the statute, 42 Pa. C.S.A. §8309, specifically defines "doing business."

The present "long-arm" statute became effective February 13, 1973, developing from prior enactments and expanding jurisdiction. "[F]or purposes of in personam jurisdiction over unregistered foreign corporations the evolution of the Pennsylvania 'long-arm' statute has now become coexistent with the evolution of substantive jurisdictional due process as expressed by the United States Supreme Court.": Proctor &

_____

are limited to . . . a petition raising a question of jurisdiction or venue or attacking the form or service of a writ of summons. . . ."

Schwartz, Inc. v. Cleveland Lumber Company, 228 Pa. Superior Ct. 12, 17-18, 323 A.2d 11 (1974). See also H. Alpers & Associates v. Omega Precision Hand Tools, Inc., 62 F.R.D. 408 (E.D. Pa., 1974); Raskin v. First Federal Savings & Loan Association of Erie, 372 F. Supp. 1053 (W.D. Pa., 1974). Thus, due process requirements need only be met to render Parker amenable to Pennsylvania service.

In Image Ten, Inc. v. Walter Reade Organization, Inc., 456 Pa. 485, 488-89, 322 A.2d 109 (1974), our Supreme Court summarized pertinent leading United States Supreme Court cases on this subject as follows:

"Under Pennoyer v. Neff, 95 U.S. 714, 24 L.Ed. 565 (1878), the due process inquiry was addressed to the 'presence' of the defendant in the forum state. International Shoe Co. v. Washington, 326 U.S. 310, 90 L.Ed. 95, 66 S.Ct. 154 (1945), looked to 'minimum contacts' in the forum state, not 'physical presence' in the forum state. International Shoe Co. said: '[D]ue process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, he have certain *minimum contacts* with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice". . . .' Id. at 316, 90 L.Ed. at 102, 66 S.Ct. at 158 (emphasis added). McGee v. Life Insurance Co., 355 U.S. 220, 2 L.Ed.2d 223, 78 S.Ct. 199 (1957), held that due process was met when an insurance company was subjected to the jurisdiction of the California courts, even though its only contact with the State was that insurance contracts were mailed to policyholders in that state. Due process only requires 'that there be some act by which the defendant purposefully avails [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.' Hanson v. Denckla, 357 U.S. 235, 253, 2 L.Ed.2d 1283, 1298, 78 S.Ct. 1228, 1240 (1968)."

As noted in Proctor & Schwartz, Inc., supra, at page 18:

"These decisions provide only a framework under the broad formula of 'fair play and substantial justice' and a determination of whether or not the 'minimum contacts' of a foreign corporation with a particular state are sufficient to make the corporation constitutionally amenable to process in that state must inevitably be made on an ad hoc case-by-case basis and not by the application of a mechanical rule."

That case did, however, specify certain guidelines to be utilized in determining whether the requisite "minimum contacts" are present in a particular factual situation:

"First, the defendant must have purposefully availed itself of the privilege of acting within the forum state thus invoking the benefits and protections of its laws. [Citation omitted.] Secondly, the cause of action must arise from defendant's activities within the forum state. [Citations omitted.] Lastly, the acts of the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over it reasonable. [Citations omitted.]" Id. at page 19.

Plaintiff, *in its brief*, alleges that the contract between Parker and defendant, negotiated over the telephone, was accepted by defendant in Pennsylvania and, therefore, Pennsylvania law governs the agreement. We find no proof of this, but even if we accept it as true, under the circumstances it is not sufficient to give Pennsylvania jurisdiction over Parker, even though the lease perhaps resulted in pecuniary gain to Parker. The present cause of action concerns the contract between plaintiff and defendant regarding repair of the crane. Although the lease is not completely unrelated to the suit, it is, at best, only indirectly involved. The crane passed through Pennsylvania as a result of defendant's contract with York;

Parker had no control over the route (and Pennsylvania need not be part of the route from New Jersey to Washington, D.C.). We concluded after considering carefully the facts and the potential interests of the Commonwealth, that Parker's contact with Pennsylvania was too ephemeral to fairly and reasonably subject it to the jurisdiction of this court. That decision should be affirmed.