Jimmy TESTA, John Thomas and Carl Thomas, Plaintiffs,

v.

Danny JANSSEN, Bobby Hart, Jeff S. Wald, Helen Reddy, Pocket Full of Tunes, Inc., The Wes Farrell Organization, and Capitol Records, Inc., Wes Farrell, and The Big Apple Music Company, Defendants.

Civ. A. No. 76–54.

United States District Court,
W. D. Pennsylvania.

Jan. 22, 1980.

Irving M. Portnoy, Pittsburgh, Pa., for plaintiff.

Robert D. Yeager, Pittsburgh, Pa., for Jeff Wald, Helen Reddy and Capitol Records.

G. Daniel Carney, Pittsburgh, Pa., Robert C. Osterberg, New York City, for Wes Farrell, The Wes Farrel Organization, Pocket Full of Tunes, Danny Janssen, Bobby Hart, and the Big Apple Music Co.

## OPINION

ZIEGLER, District Judge.

### I. *History of Case*

This is a civil action for injunctive relief and damages for alleged copyright infringement pursuant to the Federal Copyright Act, 17 U.S.C. § 101, *et seq.* Jurisdiction is conferred by 28 U.S.C. § 1338.

Plaintiffs, Jimmy Testa, John Thomas and Carl Thomas were assigned all right, title, and interest to an original composition entitled, "Kept on Singing" in 1971. Registration and certification of the copyright was obtained on November 15, 1971. The alleged infringement is predicated on a musical composition entitled, "Keep on Singing," allegedly written in 1972 by defendants Danny Janssen and Bobby Hart and sung by defendant, Helen Reddy. On Au-

gust 28, 1972, Janssen and Hart assigned their rights to "Keep on Singing" to defendant, Pocket Full of Tunes, Inc., a company wholly owned by defendant, Wes Farrell. Pocket Full of Tunes registered a copyright for "Keep on Singing" on December 8, 1972.

The instant action was commenced on January 1, 1976. Discovery proceedings revealed that Pocket Full of Tunes had assigned its copyright to "Keep on Singing" to the Big Apple Music Company (Big Apple) on June 15, 1977. As a result, plaintiffs amended their complaint and summoned Big Apple as a defendant.

Presently before the court are the following matters: (1) the motions to dismiss for alleged want of *in personam* jurisdiction and venue by Big Apple and Wes Farrell; and (2) a motion to dismiss by the Wes Farrell Organization alleging want of capacity. For the reasons set forth herein, the motions to dismiss of Wes Farrell and the Wes Farrell Organization will be granted. The motion to dismiss of Big Apple will be denied.

II. *The Motion to Dismiss of Big Apple*

An affidavit submitted by Big Apple in support of its motion to dismiss avers that: (1) Big Apple is a New York corporation and not qualified to do business in Pennsylvania; (2) it maintains no bank account in Pennsylvania; (3) it owns no property in Pennsylvania; (4) it ships no merchandise into the forum state; and (5) it has no agents within the Commonwealth. Accordingly, Big Apple contends this court lacks *in personam* jurisdiction and venue is improper.

Title 28 U.S.C. § 1400(a) provides:

Civil actions, suits, or proceedings arising under any Act of Congress relating to copyrights may be instituted in the district in which the defendant or his agent resides or may be found.

As a practical matter, the test is identical for determining the question of venue and jurisdiction over a non-resident corporation. *Kogan v. Longstreet*, 374 F.Supp. 47, 50 (N.D.Ill.1974); *Boltons Trad-*

*ing Corp. v. Killiam*, 320 F.Supp. 1182 (S.D. N.Y.1970). Also, the reference in section 1400(a) to "may be found" does not impose a greater finding of presence than is required to obtain jurisdiction over a corporate defendant. *Boltons Trading Corp. v. Killiam, supra* at 1183. Therefore, if a nonresident corporation is amenable to process under the forum's long-arm statute, *in personam* jurisdiction and venue are extant. *Time, Inc. v. Manning*, 366 F.2d 690 (5th Cir. 1966); *Droke House Publishers, Inc. v. Aladdin District Corp.*, 352 F.Supp. 1062 (N.D.Georgia 1972).

Plaintiffs rely on 42 Pa.C.S.A. § 5322(a)(1)(iii) as the basis for personal jurisdiction over Big Apple. That section provides:

General rule.—A tribunal of this Commonwealth may exercise personal jurisdiction over a person (or the personal representative of a deceased individual who would be subject to jurisdiction under this subsection if not deceased) who acts directly or by an agent, as to a cause of action or other matter arising from such person:

(1) Transacting any business in this Commonwealth. Without excluding other acts which may constitute transacting business in this Commonwealth, any of the following shall constitute transacting business for the purpose of this paragraph:

\* \* \* \* \* \*

(iii) The shipping of merchandise directly or indirectly into or through this Commonwealth.

Pursuant to an agreement with Broadcast Music, Inc. (BMI) that runs through June of 1980, Big Apple assigned to BMI the right to perform and license others to perform all musical compositions in which it owns or holds a copyright. BMI is authorized to distribute Big Apple's songs anywhere in the world. In return, BMI agreed to compensate Big Apple "for performances of works on broadcast stations in the United States." The alleged infringing song, "Keep on Singing," is covered by this agree-

ment.[1] The song has been and continues to be played on radio stations in Western Pennsylvania and sold at retail outlets in this area.[2]

■ Under Pennsylvania law, a foreign corporation "indirectly" ships merchandise into the Commonwealth, pursuant to section 5322(a)(1)(iii), when it "could reasonably foresee that its product would be sold . . . to outlets around the country, and that Pennsylvania would be one such market." *Washington v. U. S. Suzuki Motor Corp.*, 257 Pa.Super. 482, 390 A.2d 1339, 1340 (1978). The Pennsylvania Supreme Court abrogated the rule enunciated in *Swavely v. Vandergrift*, 397 Pa. 281, 154 A.2d 779 (1959) which required foreign corporations to defend suits in Pennsylvania only if the "middleman" or "shipper" was an agent of the foreign corporation. *Image Ten, Inc. v. Walter Reade Organization, Inc.*, 456 Pa. 485, 322 A.2d 109, 113–114 (1974). As the court explained:

A nonregistered foreign corporation may now be subject to suit in Pennsylvania whether or not its agents or employees were ever physically present in this State and regardless of the contractual relationship between the foreign company and its Pennsylvania representative.

*Id.* at 114. This rule is applicable even if the middleman or shipper is a non-resident. *McCrory Corp. v. Girard Rubber Corp.*, 225 Pa.Super. 45, 307 A.2d 435, *aff'd*, 459 Pa. 57, 327 A.2d 8 (1974).

The *Image Ten* holding is particularly apposite to the instant case because the foreign corporation was held to have "indirectly" shipped motion picture film into Pennsylvania within the meaning of the long-arm statute, even though it was never physically present in that jurisdiction and had no agents in the state. Significantly, the court rejected the claim of the foreign corporation that a motion picture film was not "merchandise." The court stated:

There is no such restriction in the statute and the word 'merchandise' clearly ap-

plies to a motion picture film, just as it would to any product which is marketable because of its artistic value rather than the value of its physical components. 322 A.2d at 114.

The case law from without Pennsylvania is conflicting in a copyright infringement setting. Big Apple relies principally on *Selle v. Gibb*, No. 78C 3656 (N.D.Ill. August 2, 1979). In *Selle*, the district court held that a New York publisher was not subject to jurisdiction or venue under section 1400(a) because "[a]ll physical acts of exploitation in Illinois [were] conducted pursuant to contracts executed outside of Illinois, between [the publisher] and wholly independent third-party licensees, who are both licensed and located outside of Illinois." *Id.* at 6 (slip opinion). However, in *Walker v. University Books, Inc.*, 382 F.Supp. 126 (N.D.Cal.1974), a New York resident, who allegedly infringed a copyrighted book, was held to be subject to venue and jurisdiction in California, since "defendant reasonably could have foreseen that his acts might result in copyright infringement and unfair competition in a distant state." *Id.* at 130–131.

■ In our judgment, the Pennsylvania cases, particularly *Image Ten*, are more persuasive and are controlling. Big Apple "indirectly" shipped the alleged infringing song and other songs into Pennsylvania through its licensee, BMI. It is of no import that Big Apple's contract with BMI was executed without Pennsylvania or that Big Apple engaged in no physical acts in the Commonwealth. Since BMI is authorized to distribute songs such as "Keep on Singing" anywhere in the United States, Big Apple could reasonably have foreseen that the song would be distributed in Pennsylvania.

Having decided that Big Apple's activities in Pennsylvania fall within the ambit of section 5322(a)(1)(iii), we must now decide whether the assertion of long-arm jurisdiction offends the due process clause of the

---

1. *See* Exhibit A to plaintiffs' reply brief.

2. *See* affidavit of Verlee Prybloski attached to plaintiffs' reply brief.

fourteenth amendment. *Columbia Metal Culvert Co. v. Kaiser Industries Corp.*, 526 F.2d 724, 730 (3d Cir. 1975).

Due process, in a jurisdictional context, requires that a defendant "have certain minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

The exhibits and affidavit submitted by plaintiffs in opposition to Big Apple's motion indicate that "Keep on Singing" has been and continues to be played by Pennsylvania radio stations and sold at Pennsylvania stores. Moreover, the materials submitted also indicate that BMI distributes other Big Apple songs which are played on Pennsylvania stations and sold in Pennsylvania stores.[3]

Under these circumstances, the observations of the Court of Appeals in *Edy Clover Productions, Inc. v. National Broadcasting Co., Inc.*, 572 F.2d 119 (3d Cir. 1978) are particularly apposite. In holding that a California producer of game shows was subject to suit in New Jersey for copyright infringement, the court stated:

> It is also clear that a producer of a television program, who knows that the production will be transmitted interstate, can anticipate that infringement may result at places remote from the place of production. There is, therefore, no unfairness in requiring the producer to answer such a charge in the state in which it arises.

*Id.* at 120–121.

As in *Edy Clover*, we perceive no unfairness in requiring Big Apple to defend this suit in Pennsylvania. Through its agreement with BMI, Big Apple should have anticipated that infringement may occur in locales without New York. Accordingly, we conclude that Big Apple's motion to dismiss for want of jurisdiction and venue must be denied.

III. *The Motion to Dismiss of Wes Farrell*

 Wes Farrell, an individual who resides in California, is the sole officer and director of Pocket Full of Tunes. Farrell also moves to dismiss for want of jurisdiction and venue. He contends that while Pocket Full of Tunes may have conducted business in Pennsylvania, Farrell's activities were conducted solely on behalf of the corporation and therefore jurisdiction is absent. We agree.

Plaintiffs' allegations vis-a-vis Farrell relate to the activities of Pocket Full of Tunes, Inc. Nowhere do plaintiffs allege that Farrell was acting individually and not on behalf of the corporation. Under Pennsylvania law, the transaction of business solely as an officer or agent of a corporation does not establish jurisdiction over the individual. *Miller v. American Telephone & Telegraph Co.*, 394 F.Supp. 58, 62–63 (E.D. Pa.1975), aff'd, 530 F.2d 964 (3d Cir. 1976). As the district court noted in *Spelling-Goldberg Productions v. Bodek & Rhodes*, 452 F.Supp. 452 (E.D.Pa.1978):

> Relevant to the determination of whether an individual has done business in the Commonwealth, is the individual's activities and not his corporation's or those done by him on behalf of the corporation as an officer or agent. Establishing personal jurisdiction over an individual on the basis of 'doing business' requires that the evidence show not only that the individual did business within Pennsylvania as defined in 42 Pa.C.S.A. § 8309, but that the business was done by the individual for himself and not for or on behalf of his corporation.

*Id.* at 454. Since plaintiffs do not contend that Pocket Full of Tunes is a sham corporation or that Farrell was acting as the alter ego of the corporation, the foregoing principles are controlling. *Id.* at 455; *Feld v. Tele-View, Inc.*, 422 F.Supp. 1100, 1104 (E.D.Pa.1976). Wes Farrell's motion to dismiss must be granted.

---

**3.** See p. 6 to Exhibit A of plaintiffs' reply brief. The court can and will take judicial notice that the songs, "Knock Three Times" and "Candi- da" are well known recordings and frequently broadcast by radio stations in Western Pennsylvania.

### IV. The Motion to Dismiss of Wes Farrell Organization

The Wes Farrell Organization moves to dismiss the complaint alleging want of capacity in that it is not an entity capable of being sued. The Wes Farrell Organization is a name employed by Farrell to identify the numerous companies which he controls. Pocket Full of Tunes, Inc. is one of these companies.

The capacity of an entity to sue or be sued is governed by Fed.R.Civ.P. 17(b), which provides:

> Capacity to Sue or be Sued. The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. The capacity of a corporation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held, except (1) that a partnership or other unincorporated association, which has no such capacity by the law of such state, may sue or be sued in its common name for the purpose of enforcing for or against it a substantive right existing under the Constitution or laws of the United States, and (2) that the capacity of a receiver appointed by a court of the United States to sue or be sued in a court of the United States is governed by Title 28, U.S.C., §§ 754 and 959(a).

Plaintiffs' cause of action arises under the federal copyright laws and, therefore, if the Wes Farrell Organization is an "unincorporated association," it has the capacity to be sued under Rule 17(b)(1). Wright & Miller, Federal Practice & Procedure: Civil § 1564, at 743; *Action Alliance for Senior Citizens of Greater Philadelphia v. Shapp*, 400 F.Supp. 1208, 1212 (E.D.Pa.1975).

Under Rule 17(b)(1), an unincorporated association has been defined as:

> '[A] voluntary group of persons, without a charter, formed by mutual consent for the purpose of promoting a common enterprise or prosecuting a common objective.' In *Yonce v. Miners Memorial Hospital Association*, 161 F.Supp. 178, 186 (W.D.Va.1958), the court adopted a similar definition, specifying that it encompassed 'trade unions, fraternal organizations, business organizations, and the like.'

*Associated Students of University of California at Riverside v. Kleindienst*, 60 F.R.D. 65, 67 (C.D.Cal.1973); *accord, Local 4076, United Steelworkers of America v. United Steelworkers of America, AFL–CIO*, 327 F.Supp. 1400, 1403 (W.D.Pa.1971).

In our judgment, the Wes Farrell Organization is merely a title used by Farrell to conveniently identify the numerous companies over which he has control. In contrast to the groups commonly defined as unincorporated associations, the Wes Farrell Organization is not a distinct entity. And, since Pocket Full of Tunes, a company encompassed within the "The Wes Farrell Organization," is a defendant in this action, we perceive no reason to extend the definition of "unincorporated association" to include a fictitious entity. The motion of the Wes Farrell Organization to dismiss will be granted.[3]

An appropriate order will follow.

---

**3.** Plaintiffs argue that even if the Wes Farrell Organization lacks the capacity to be sued, the defense was waived because it failed to assert the defense when it answered in June of 1976. *See* Fed.R.Civ.P. 9(a); and Wright & Miller, Federal Practice & Procedure: Civil § 1295, at 397. This contention is without merit. As Professors Wright & Miller have indicated, even if we reach the question of waiver, the liberal amendment policy of Rule 15 would permit the Organization to amend its answer to plead want of capacity.